# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00538-KES                     Date:  June 12, 2026

Title: EVELYN VILLAREAL GONZALEZ v. NISSAN NORTH AMERICA, INC.

PRESENT:

### THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**      **Order GRANTING Plaintiff's Motion to Remand (Dkt. 8)**

## I.      BACKGROUND

On or around July 20, 2024, Plaintiff Evelyn Villareal Gonzalez ("Plaintiff") purchased a new 2024 Nissan Altima (the "Subject Vehicle") from Metro Nissan, a Nissan dealership in Montclair, California.  (See Dkt. 1-1 at 6, ¶ 8.)  The Retail Installment Sales Contract (the "RISC") reflects a total sale price of $56,222.88.  (Dkt. 8-1 at 17.)  According to Plaintiff, the Subject Vehicle was delivered to her "with serious defects and nonconformities" which have caused "extensive and ongoing problems," substantially impairing the Subject Vehicle's "use, value and/or safety."  (Id. at 6-7, ¶ 13.)  These defects include issues with the sensors and warning lights.  (Id. at 7-8, ¶ 13 (table).)  Starting as early as February 2025, Plaintiff regularly brought her car to the dealership requesting repairs.  (See Dkt. 8-1 at 22 (at Dropbox link, click "Repair Orders").)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-00538-KES                                    Date: June 12, 2026
                                                                          Page 2

Meanwhile, on September 29, 2024, California Governor Gavin Newsom signed Assembly Bill ("AB") 1755 into law.[1]  AB 1755 contains new statutory provisions aimed at reducing litigation and streamlining procedures in lemon law cases:

> Under the new procedures, a consumer seeking civil penalty damages must first submit a written repurchase demand to the manufacturer before filing suit.  If the vehicle qualifies for repurchase or replacement, the manufacturer must make an offer within 30 days and complete the repurchase or replacement within 60 days.  Failure to comply with either deadline exposes the manufacturer to civil penalty liability.
>
> Once litigation begins, the filing of the manufacturer's responsive pleading stays traditional discovery pending completion of an early mediation process.  Within 60 days after the responsive pleading is filed, both sides must exchange mandatory initial disclosures, including repair records, warranty information, repurchase evaluations, lemon law policies, customer communications and relevant ownership and financing documents.

Joseph A. Kaufman, One Year Later: California Lemon Law Litigation After the 2025 Procedural Reforms, L.A. Daily J., June 2, 2026, at 1, 6.

AB 1755 went into effect on January 1, 2025, and is codified at California Code of Civil Procedure §§ 871.20–871.28.[2]  See A.B. 1755, 2023-24 Leg., Reg. Sess. (Cal. 2024).  In addition to the aforementioned procedures, § 871.27 created new offsets, or deductions, available to defendants to reduce their statutory damages liability.  See id.; see also Cal. Civ. Proc. Code § 871.27.  Section 871.20 clarifies that the law only applies to manufacturers who "opt in."  Id. § 871.20(a).  On April 28, 2025, Defendant Nissan North America, Inc. ("Defendant") elected to opt in to

---

[1] New Lemon Law Procedures, Cal. Dep't of Consumer Affs.: Arb. Certification Program, https://www.dca.ca.gov/acp/new_lemon_law.shtml (last visited June 11, 2026).

[2] Section 871.24 became effective on April 1, 2025.  Carver v. Volkswagen Grp. of Am., Inc., 107 Cal. App. 5th 864, 893 n.2 (2024) (Adams, J., dissenting).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00538-KES                                    Date: June 12, 2026
                                                             Page 3

AB 1755, binding itself to these procedures.[3]  (Dkt. 1-1 at 8, ¶ 16.)

On April 1, 2025, Plaintiff contacted Defendant to request a repurchase or replacement of the Subject Vehicle.  (Dkt. 1-1 at 8, ¶ 17; Dkt. 8-2 at 2, ¶ 3.)  On April 10, 2025, Defendant advised Plaintiff that it intended to repurchase the Subject Vehicle but needed documentation to proceed.  (Dkt. 8-2 at 2, ¶ 4.)  Plaintiff submitted those documents over "the next couple of weeks."  (Id. ¶ 5.)  In a letter dated May 13, 2025, Defendant offered to "buy back" the Subject Vehicle if Plaintiff paid $12,326.08, a number Defendant calculated by subtracting the total deductions from the total amounts paid.[4]  (Dkt. 8-2 at 2, ¶ 6; see also id. at 10-12 (offer letter).)  Plaintiff declined the offer, contending that it improperly sought recoverable deductions under California Code of Civil Procedure § 871.20(b)(2).  (Dkt. 8 at 7.)

On August 12, 2025, Plaintiff filed this lawsuit against Defendant in the Riverside County Superior Court.  (See "Complaint" at Dkt. 1-1.)  On September 29, 2025, Plaintiff served Defendant with the Summons and Complaint.  (Id. at 2.)  Plaintiff is suing over defects to the Subject Vehicle under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code §§ 1790–1795.8, for breach of express and implied warranties.  (Id. at 6, ¶¶ 8-12.)

In compliance with AB 1755, both parties served initial disclosures.  Defendant served its initial disclosures on December 23, 2025, and Plaintiff served

---

[3] Manufacturers, Cal. Dep't of Consumer Affs.: Arb. Certification Program, https://www.dca.ca.gov/acp/accepted_manufacturers.shtml (last visited June 5, 2026).

[4] Plaintiff states in her declaration, "On May 13, 2025, Nissan sent me an itemized offer letter stating they would repurchase the Subject Vehicle.  However, the offer stated that I would be responsible to pay Nissan over $12,000.00 to have my Vehicle repurchased."  (Dkt. 8-2 at 2, ¶ 6.)  To reach this amount, Defendant added up the agreed value of trade-in, cash down payment, principal paid to date, interest paid to date, registration, principal paid to date, and interest paid to date.  (Id. at 10.)  The sum of the total amounts paid equaled $17,695.32.  (Id.)  Then Defendant subtracted deductions for less usage, prior credit, Ikon, Siskin Enterprises, NESNA, and debt cancellation agreement, amounting to $30,021.40.  (Id.)  That resulted in an "Amount Due FROM Customer" of $12,326.08.  (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00538-KES                                           Date: June 12, 2026
                                                                              Page 4

hers on January 9, 2026.  (Dkt. 8-1 at 10-16, 22.)  Plaintiff supplemented her initial disclosures on February 19, 2026, with the payment history for the Subject Vehicle. (Dkt. 15 at 3, ¶ 8; Dkt. 15-1.)

On March 9, 2026, Defendant removed the case to federal court alleging diversity jurisdiction.  ("Notice of Removal" at Dkt. 1.)  On April 6, 2026, Plaintiff moved to remand the case to state court.  ("Remand Motion" at Dkt. 8.)  Plaintiff does not challenge the accuracy of any of Defendant's factual allegations in the Notice of Removal.  Rather, Plaintiff alleges only that Defendant's Notice of Removal was untimely.  (Id. at 10-18.)  On April 14, 2026, Defendant opposed the Remand Motion.  (Dkt. 9.)  On April 21, 2026, Plaintiff replied.  (Dkt. 10.)

On April 30, 2026, the Court issued a scheduling notice taking the hearing off calendar pursuant to Local Rule 7-15 and ordering Plaintiff to file her AB 1755 statutory disclosures or the portion of the statutory disclosures she contends made removal ascertainable to Defendant.  (Dkt. 11.)  On May 14, 2026, Plaintiff timely filed a declaration of attorney Derrick Y. Chu addressing the Court's order.  ("Chu Declaration" at Dkt. 13.)  Defendant responded with a declaration of attorney Nykeemah C. McClendon.  ("McClendon Declaration" at Dkt. 15.)

For the reasons stated below, Plaintiff's motion is GRANTED.

## II.    RELEVANT LAW

### A.    Federal Diversity Jurisdiction.

Federal diversity jurisdiction requires (1) complete diversity among the parties and (2) an amount in controversy that exceeds $75,000.  28 U.S.C. § 1332; Home Depot U.S.A., Inc. v. Jackson, 587 U.S. 435, 437-38 (2019).  In a case with one plaintiff and one defendant (like this case[5]), complete diversity exists when the plaintiff is a citizen of a different state than the defendant.  See Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018).

For purposes of diversity jurisdiction, a person's citizenship refers to the

---

[5] Doe defendants do not affect diversity.  Bryant v. Ford Motor Co., 866 F.2d 1526, 1528 (9th Cir. 1989); see also 28 U.S.C. § 1441(b)(1) (disregarding "the citizenship of defendants sued under fictitious names").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00538-KES                                         Date: June 12, 2026
                                                                  Page 5

state where they are domiciled and intend to remain.  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  Residency is not the same as citizenship. Ehrman v. Cox Commc'ns, Inc., 932 F.3d 1223, 1227 (9th Cir. 2019).  However, "a person's residence constitutes *some* evidence of domicile," Adams v. W. Marine Prod., Inc., 958 F.3d 1216, 1221 (9th Cir. 2020), and can—in conjunction with other evidence—constitute sufficient facts to establish diversity jurisdiction, see Ramirez-Martinez v. Nissan N. Am., Inc., No. 2:25-cv-04744-MAR, 2025 U.S. Dist. LEXIS 261259, at *8 (C.D. Cal. Dec. 16, 2025).

Calculating the amount in controversy requires consideration of the "amount at stake in the underlying litigation."  Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 793 (9th Cir. 2018) (quoting Theis Rsch., Inc. v. Brown & Bain, 400 F.3d 659, 662 (9th Cir. 2005)).  To overcome a motion to remand to the state court, the removing defendant must show by a preponderance of the evidence that the amount in controversy exceeds $75,000.  See id. at 795; see also Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 912 (N.D. Cal. 2020) (citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)).

## B.      Timing Rules Governing Removal.

There are three potential time limits on removal.

Scenario One: If facts sufficient to establish the existence of federal diversity jurisdiction are alleged in the complaint, then a defendant must remove within 30 days of being served with the complaint.  28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ….."); see also Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 692-93 (9th Cir. 2005) (clarifying that, in this scenario, the facts supporting diversity jurisdiction must be "apparent from the face of the complaint").

Scenario Two: If, during the course of litigation, the plaintiff serves the defendant with some "other paper" that establishes the existence of federal diversity jurisdiction, then the defendant must remove within 30 days of being served with the "other paper."  28 U.S.C. § 1446(b)(3) ("[A] notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from

Case No. 8:26-cv-00538-KES                                    Date: June 12, 2026
                                                                          Page 6

which it may first be ascertained that the case is one which is or has become removable."); see also Harris, 425 F.3d at 694.  The "removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'" Dietrich v. Boeing Co., 14 F.14th 1089, 1091 (9th Cir. 2021).

Scenario Three: If the defendant conducts its own investigation and learns facts establishing the existence of federal diversity jurisdiction, the defendant may remove at any time that is within one year of service of the complaint.  28 U.S.C. § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."); see also Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013) (holding that a defendant may remove within 30 days of discovering facts supporting diversity jurisdiction, although a defendant is not obligated to conduct such an investigation).

## III.    DISCUSSION

According to Plaintiff, "Defendant has had multiple opportunities to remove this case to federal court but has blown every single deadline to do so."  (Dkt. 8 at 11.)  Defendant maintains that neither the Complaint nor the initial disclosures exchanged by the parties triggered a 30-day deadline to remove the case.  (Dkt. 9 at 8.)  Consequently, Defendant argues, its removal on March 9, 2026, within one year of service of the Complaint, was proper.  (Id.)

The Court has examined each opportunity identified by Plaintiff in the Remand Motion and concludes that removal was ascertainable upon Plaintiff serving her AB 1755 initial disclosures on Defendant on January 9, 2026.  (Id.) Therefore, Defendant's deadline to remove the case was February 9, 2026.[6]  Since Defendant did not remove the case until March 9, 2026, it missed the deadline, and remand to state court is appropriate.

---

[6] Exactly 30 days after January 9, 2026, is February 8, 2026, which is a Sunday.  Under both the federal rules and the California rules of civil procedure, when a filing deadline falls on a weekend or holiday, that deadline is extended to the next working day.  Fed. R. Civ. P. 6(a)(2)(C); Cal. Rule of Court 1.10(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00538-KES                                    Date: June 12, 2026
                                                             Page 7

## A.   Defendant Could Not Have Ascertained Removal from the Face of the Complaint (Scenario One).

Plaintiff alleges, "Defendant was in possession of the [RISC] and repair orders as early as May 13, 2025, when it sent its defective offer letter to Plaintiff, and [it] was in possession of the documents when Defendant was served with the Complaint on September 29, 2025." (Id.)  Plaintiff argues that "Defendant had all that it needed to 'analyze the [RISC]' for AB1755 deductions to … determine whether the case was removable." (Id.)  Under this theory, Defendant's 30-day deadline to remove the case to federal court expired on October 29, 2025.  (Id.)

Essentially, Plaintiff is arguing that the Complaint, plus an investigation of materials already in Defendant's possession, provided information sufficient to ascertain the availability of removal.  But, in Scenario One, the facts supporting diversity jurisdiction must be apparent from the face of the complaint.  Plaintiff's Complaint only communicated to Defendant that she "is an individual who at all times relevant was and is a *resident* of the City of Jurupa Valley, County of Riverside, State of California." (Dkt. 1-1 at 5, ¶ 2 (emphasis added).)  A complaint that alleges only the plaintiff's residence, but not her domicile or citizenship, does not contain enough information to trigger the 30-day removal deadline.  Harris, 425 F.3d at 695-96.  Additionally, the defendant is not under a duty to conduct further investigation beyond the face of the complaint under Scenario One.  See id. at 695.

One must "apply a reasonable amount of intelligence in ascertaining removability." Kuxhausen v. BMW Fin. Servs. N. Am. LLC, 707 F.3d 1136, 1140 (9th Cir. 2013).  Accordingly, as Plaintiff points out in her Remand Motion, "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings should be used to determine whether it is facially apparent that a case is removable." (Dkt. 8 at 13 (citation modified).)  That said, in ascertaining whether a case can be removed, the defendant "need not make extrapolations or engage in guesswork." Kuxhausen, 707 F.3d at 1140.

Plaintiff initially filed her Complaint in the state court as an unlimited civil action, indicating that the amount in controversy exceeds $35,000.  (Dkt. 1-1 at 14.)  She alleges that the total lease price of the Subject Vehicle was $56,222.88. (Id. at 6, ¶ 8.)  Plaintiff further alleges that, in response to her request that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00538-KES                                    Date: June 12, 2026
                                                             Page 8

Defendant repurchase or replace the Subject Vehicle, Defendant made her an offer but she does not include that amount in her Complaint except for stating it was "non-compliant." (Id. at 8, ¶ 17.)  Plaintiff also does not provide an estimate of the Subject Vehicle's current value.  She does not allege any specific monetary amounts in her prayer for relief.  (See id. at 12-13.)

Neither Plaintiff's citizenship nor the amount in controversy are sufficiently definite on the face of the Complaint to trigger the 30-day removal deadline under Scenario One.

> **B.      "Other Papers" from Which Removal Can Be Ascertained Must Be Received, Not Sent, by the Removing Defendant (Scenario Two— _Possibility A_).**

Plaintiff suggests that the initial disclosures provided by Defendant to Plaintiff in accordance with AB 1755 served as "other papers" that triggered a second 30-day removal deadline.  (Dkt. 8 at 12-13.)  Defendant argues that its "own statutory disclosures are not an 'other paper' that triggers the § 1446(b)(3) deadline." (Dkt. 9 at 16.)

Defendant is correct.  "Receipt by the … defendant … is required to start the running of the thirty-day removal deadline."  Willform v. City of Ceres, No. 1:20-cv-00989-DAD-SAB, 2021 U.S. Dist. LEXIS 71427, at *3 (E.D. Cal. Apr. 12, 2021) (citing Anderson v. State Farm Mut. Auto. Ins. Co., 917 F.3d 1126, 1127 (9th Cir. 2019)); see also In re Ford Motor Co. DPS6 Powershift Transmissions Prods. Liab. Litig., No. 2:18-ml-02814-AB-PVC, 2019 WL 1651618, at *3 (C.D. Cal. Apr. 16, 2019) (declining to find that the removing defendant's own settlement offers constituted "other papers").  Therefore, Defendant's own statutory disclosures do not establish a removal deadline.

> **C.      Plaintiff's Statutory Disclosures Were "Other Papers" from Which Removal Could Be Ascertained (Scenario Two— _Possibility B_).**

Next, Plaintiff contends that her own AB 1755 initial disclosures to Defendant constituted "other papers" pursuant to § 1446(b)(3).  (Dkt. 8 at 12-13.)  Plaintiff states that Defendant was in possession of these "other papers" by January 9, 2026, when Plaintiff served her initial disclosures as required by statute.  (Id. at 2-3, ¶ 3.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-00538-KES                                    Date: June 12, 2026
                                                              Page 9

Courts in the Central District are split over whether diversity of citizenship is ascertainable when the complaint alleges a state of residency, but not citizenship, for the plaintiff "at all relevant times" and other documents consistently show a mailing address for the plaintiff in that state.  See, e.g., Galaviz v. GM, LLC, No. 2:25-cv-07039-JLS-MAR, 2025 U.S. Dist. LEXIS 214146, at *5-7 (C.D. Cal. Oct. 28, 2025) (finding diversity of citizenship with residency alleged in the complaint and documents showing that Plaintiff lived in the same city for three years prior to initiating the lawsuit); Ramirez-Martinez, 2025 U.S. Dist. LEXIS 261259, at *2 (finding that the plaintiff's production of the vehicle sales contract, repair orders, and registration sufficiently establish citizenship when the complaint only alleges residency).  But see, e.g., Chavarin v. GM LLC, No. 2:25-cv-06852-HDV-MBK, 2025 U.S. Dist. LEXIS 214175, at *11 (C.D. Cal. Oct. 29, 2025) (concluding that the sales contract and repair orders did not have any "bearing on the central issue of Plaintiff's *intention to remain* in California").  Cf. Gonzalez v. GM LLC, No. 2:25-cv-09808-SK, 2026 U.S. Dist. LEXIS 10467, at *5 (C.D. Cal. Jan. 20, 2026) (finding that citizenship was not readily ascertainable based *only* on an allegation of residency in the complaint); Reynoso v. GM LLC, No. 2:25-cv-08412-AJR, 2025 U.S. Dist. LEXIS 218444, at *18 (C.D. Cal. Nov. 5, 2025) (same).

Plaintiff's initial disclosures included the following documents: (1) a copy of the RISC signed by Plaintiff on July 20, 2024; (2) nine repair orders from Metro Nissan of Montclair between the dates of October 8, 2024,[7] and May 5, 2025; (3) Defendant's repurchase offer letter dated May 13, 2025; (4) eight repair orders from Empire Nissan in Ontario, California, between the dates of June 3, 2025, and January 3, 2026; and (5) Plaintiff's registration card, issued by the California Department of Motor Vehicles ("DMV"), valid from July 22, 2025, to July 22, 2026. (Dkt. 8-1 at 22 (Dropbox link).)  The RISC, Metro Nissan of Montclair repair orders, and Defendant's repurchase offer letter all contain a mailing address for Plaintiff on Eve Circle in Jurupa Valley, California.  The DMV registration card and Empire Nissan repair orders provide a mailing address for Plaintiff on Lynn

---

[7] The October 8, 2024, repair order reflects a routine service appointment, and there is nothing to suggest that Plaintiff complained about the Subject Vehicle's sensors and/or warning lights to employees of Defendant on that date.  The same is true of the January 2, 2025, repair order.  This is consistent with Plaintiff's factual allegations in her Complaint.  (See Dkt. 1-1 at 7 (listing February 4, 2025, as her first visit to the dealership to request the repair of these issues).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:26-cv-00538-KES                                                Date: June 12, 2026
                                                                          Page 10

Circle in Jurupa Valley.  From these documents, it appears that she moved to the Lynn Circle address sometime around late May or early June of 2025.  Plaintiff alleges in her Complaint, filed in August 2025, that she "is an individual who *at all times relevant was and is* a resident of the City of Jurupa Valley, County of Riverside, State of California."  (Dkt. 1-1 at 5, ¶ 2 (emphasis added).)  Although a bare allegation of residency alone is not sufficient to establish citizenship, in conjunction with these other documents—the repair orders dating back to October 2024 and the DMV registration card which is valid through July 2026—there is enough material to demonstrate Plaintiff's intention to remain in California and, thus, her domicile.

Turning to the amount in controversy, the Chu Declaration refers to the RISC and repair orders—"documents that defendant manufacturers routinely use to calculate a plaintiff's damages and to calculate an amount in controversy"—as the items that made removal ascertainable to Defendant.  (Dkt. 13 at 2, ¶ 3.)  Plaintiff provides a chart of calculations using numbers taken from the RISC that total $92,204.52, absent attorney fees.  (Id. at 3-4, ¶ 6.)  Defendant's position, as articulated in the McClendon Declaration, is that the amount in controversy was not "unequivocally clear and certain" until Plaintiff supplemented her initial disclosures by providing the Subject Vehicle's payment history on February 19, 2026.[8]  (Dkt. 15 at 3, ¶ 8; see also Dkt. 15-1.)  The question, therefore, is whether the payment history was required to determine the amount in controversy.

The Complaint seeks, among other forms of relief, actual damages, a civil penalty in the amount of two times Plaintiff's actual damages, prejudgment interest, and attorney fees.  (Dkt. 1-1 at 12.)  "Actual damages under the Song-Beverly Act

---

[8] The Court notes that this was not Defendant's position in either its Notice of Removal or its opposition to the Remand Motion.  In the former, Defendant states that, "given the indeterminate nature of the contents of the complaint, Nissan was not obligated to remove the case until it performed additional investigation that made removal possible and plausible.  Therefore, the *only applicable deadline* is the one-year deadline under 28 U.S.C. § 1446(c)."  (Dkt. 1 at 10 (emphasis added).)  Defendant does not analyze the possibility of an "other paper" triggering removal.  In the latter, Defendant explicitly states that removal under § 1446(b)(3) "is not at issue here," because "no 'other paper' made removability 'unequivocally clear and certain.'"  (Dkt. 9 at 9, 15.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-00538-KES                                    Date: June 12, 2026
                                                             Page 11

are equal to the actual price paid or payable by the buyer, minus the reduction in value directly attributable to use by the buyer." Lukas v. Gen. Motors, LLC, No. 2:25-cv-08305-WLH-MAA, 2025 U.S. Dist. LEXIS 234966, at *5 (C.D. Cal. Dec. 1, 2025) (citation modified) (quoting Cal. Civ. Code § 1793.2(d)(2)(B)-(C)). California Civil Code § 1794(c) permits "a civil penalty which shall not exceed two times the amount of actual damages" for a willful violation of the Song-Beverly Act. Cal. Civ. Code § 1794(c). Attorney fees are recoverable in "a sum equal to the aggregate amount of costs and expenses … based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Id. § 1794(d).

The RISC shows a total sale price of $56,222.88. (Dkt. 8-1 at 17.) The repair order dated February 4, 2025—when it appears Plaintiff first presented the Subject Vehicle to Defendant for repairs on the particular defects—shows a mileage reading of 13,514. (Dkt. 8-1 at 22 (at, Dropbox link, click "Repair Orders").)

> Mileage bears on actual damage insofar as it translates to a reduction in a vehicle's value attributable to a "buyer prior to the time the buyer first delivered the vehicle … for correction of the problem that gave rise to the [warranty dispute]." Cal. Civ. Code § 1793.2(d)(2)(C). By statute, that reduction in value is calculated "by multiplying the actual price of the new motor vehicle … by a fraction having its denominator 120,000 and having as its numerator the number of miles traveled." Id. Thus, the higher the mileage, the higher the reduction in value, and the lower a plaintiff's actual damages.

Ramirez-Martinez, 2025 U.S. Dist. LEXIS 261259, at *9-10 (footnote omitted). Using this formula, 13,514 miles divided by a denominator of 120,000, multiplied by $56,222.88 equals $6331.63, which is the mileage deduction. That reduces the actual damages to $49,891.25.

"In addition, amendments to the [Song-Beverly Act] that took effect January 1, 2025, provide for other statutory offsets based on negative equity, manufacturer's rebate, any optional equipment or services supplied by third parties, and unpaid interest or financing costs. Cal. Civ. Code § 871.27(b)-(d), (f)." Clay v. GM, LLC, No. 2:25-cv-07962-AH-MAR, 2025 U.S. Dist. LEXIS 259159, at *4 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-00538-KES                                      Date: June 12, 2026
                                                               Page 12

Cal. Dec. 15, 2025).  A defendant is "entitled to deduct the new offsets … in addition to the typical mileage offset … to calculate the amount in controversy." Lopez v. GM, LLC, No. 2:25-cv-06549-MWF-MAA, 2025 U.S. Dist. LEXIS 178528, at *10 (C.D. Cal. Sep. 11, 2025).  The deductions are to be accounted for prior to the addition of any civil penalty.  See Schneider v. Ford Motor Co., 756 F. App'x 699, 701 n.3 (9th Cir. 2018) (citation modified) ("We have recognized that an estimate of the amount in controversy must be reduced if a specific rule of law or measure of damages limits the amount of damages recoverable.").  When the plaintiff does not produce initial disclosures or some "other paper" containing the loan payment history, the defendant cannot calculate the unpaid financing offset, which it is entitled to do.  Lopez, 2025 U.S. Dist. LEXIS 178528, at *10-11 (denying motion to remand on this basis).

> The McClendon Declaration sets forth the following argument:
>
> Although Plaintiff produced the RISC and repair orders earlier in the litigation, Plaintiff did not provide the payment history until February 19, 2026.…  And while Nissan may have been able to gather enough information to establish the amount in controversy threshold was "more than likely not" met before this time, that fact is irrelevant to the timeliness inquiry under § 1446(b)(3).  For this additional reason, Plaintiff has failed to prove that the deadline under § 1446(b)(3) applies in this case and her motion to remand must be denied.

(Dkt. 15 at 3, ¶ 8 (citations omitted).)  Defendant contends that a "mini-statement" from Partners Federal Credit Union, produced by Plaintiff on February 19, 2026, is what finally made removal ascertainable because it allowed Defendant to do its remaining offset calculations—although Defendant does not explain which offset(s) the mini-statement helped to determine, how this document assisted Defendant in its calculations, or why this argument was not raised earlier.  (Dkt. 15-1.)  The mini-statement displays Plaintiff's payment history on the Subject Vehicle from October 2024 to February 2026.  (See Attachment 4.)  However, loan payment information was already produced by Plaintiff to Defendant on or around January 9, 2026.[9]  (See Dkt. 8-1 at 22 (at Dropbox link, click "Payoff").)  Among Plaintiff's

---

[9] While Plaintiff's initial disclosures are in a Dropbox link that can be modified at any time, there is a column that provides information about when a file was last modified.  (Dkt. 8-1 at 22.)  For instance, there is another document from

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-00538-KES                                     Date: June 12, 2026
                                                                               Page 13

initial disclosures is a document titled "Payoff," which shows the remaining principal loan balance, interest rate, interest due, amount of one day's interest, Plaintiff's payment due date, and that there was no amount past due on the loan. (See Attachment 3.)  Defendant does not address the presence of this document or describe how it, in conjunction with the information contained in the RISC, would not have provided the information needed to calculate the offsets.  See United States v. Marks, 530 F.3d 799, 810 (9th Cir. 2008) ("[T]he burden of establishing federal jurisdiction is on the party invoking federal jurisdiction."); Viray v. Porsche Cars N. Am., Inc., No. 2:26-cv-00314-WLH-MAR, 2026 U.S. Dist. LEXIS 32282, at *3 (C.D. Cal. Feb. 17, 2026) ("The removing defendant bears the burden of establishing original jurisdiction.").  Even on a motion for remand, "the defendant always has the burden of establishing that removal is proper."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  Here, Defendant has not met its burden in demonstrating that removal become proper only upon Plaintiff supplementing her initial disclosures with the mini-statement.  The Court instead finds that Plaintiff's initial disclosures triggered a 30-day deadline, and Defendant failed to remove the case within that timeframe.

There is no need to analyze Scenario Three, because the Court is granting the motion for remand based on the "other papers" delivered by Plaintiff to Defendant on January 9, 2026.

## IV.    CONCLUSION

The Court GRANTS Plaintiff's Remand Motion and ORDERS that the case be remanded to the Riverside County Superior Court.

Initials of Deputy Clerk jd

---

Partners Federal Credit Union in the folder that appears to have been added two months after the other initial disclosures.  (See Attachments 2, 3.)

Case 8:26-cv-00538-KES   Document 16   Filed 06/12/26   Page 14 of 18   Page ID #:207



Partners Federal Credit Union
P.O. Box 10000
Lake Buena Vista, FL 32830-1000
800.948.6677

# (MINI-STATEMENT*)

| EVELYN GONZALEZ | | |
|---|---|---|
| ▮ | ACCOUNT: ▮ | PERIOD: 10/01/24 TO 02/19/26 |

**2024 NISSAN ALTIMA ID:0091**

| EFFECT | POST | TRANSACTION DESCRIPTION | AMOUNT | NEW BALANCE |
|---|---|---|---|---|
| 10/01/24 | | ID 0091 - **2024 Nissan Altima** Balance Forward | | 37,126.30 |
| 12/11/24 | 12/11/24 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 595.00 | 37,024.91 |
| | | Finance Charge: $493.61 Fees: $0.00 | | |
| 01/15/25 | 01/15/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 594.00 | 36,670.20 |
| | | Finance Charge: $239.29 Fees: $0.00 | | |
| 02/19/25 | 02/19/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 594.00 | 36,313.20 |
| | | Finance Charge: $237.00 Fees: $0.00 | | |
| 03/10/25 | 03/10/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 594.00 | 35,846.60 |
| | | Finance Charge: $127.40 Fees: $0.00 | | |
| 03/12/25 | 03/12/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 300.00 | 35,559.84 |
| | | Finance Charge: $13.24 Fees: $0.00 | | |
| 03/19/25 | 03/19/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 295.00 | 35,310.80 |
| | | Finance Charge: $45.96 Fees: $0.00 | | |
| 04/09/25 | 04/09/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 200.00 | 35,247.73 |
| | | Finance Charge: $136.93 Fees: $0.00 | | |
| 04/22/25 | 04/22/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 400.00 | 34,932.34 |
| | | Finance Charge: $84.61 Fees: $0.00 | | |
| 06/09/25 | 06/09/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 587.00 | 34,654.96 |
| | | Finance Charge: $309.62 Fees: $0.00 | | |
| 07/15/25 | 07/15/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 394.00 | 34,491.33 |
| | | Finance Charge: $230.37 Fees: $0.00 | | |
| 07/15/25 | 07/15/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 200.00 | 34,291.33 |
| | | Finance Charge: $0.00 Fees: $0.00 | | |
| 08/19/25 | 08/19/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 600.00 | 33,912.96 |
| | | Finance Charge: $221.63 Fees: $0.00 | | |

| 09/16/25 | 09/16/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 590.00 | 33,498.30 |
|---|---|---|---|---|
| | | Finance Charge: $ 175.34 Fees: $ 0.00 | | |
| 10/14/25 | 10/14/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 593.00 | 33,078.50 |
| | | Finance Charge: $ 173.20 Fees: $ 0.00 | | |
| 11/18/25 | 11/18/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 594.00 | 32,698.29 |
| | | Finance Charge: $ 213.79 Fees: $ 0.00 | | |
| 11/18/25 | 11/18/25 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 593.43 | 32,104.86 |
| | | Finance Charge: $ 0.00 Fees: $ 0.00 | | |
| 01/15/26 | 01/15/26 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 595.00 | 31,853.71 |
| | | Finance Charge: $ 343.85 Fees: $ 0.00 | | |
| 02/17/26 | 02/17/26 | PAYMENT - THANK YOU TRANSFER FROM SHARE 0001 FUNDS TRANSFER VIA MOBILE | 599.00 | 31,448.82 |
| | | Finance Charge: $ 194.11 Fees: $ 0.00 | | |
| 02/19/26 | | Ending Balance | | 31,448.82 |

*Not an official monthly statement.



?    **Log in**    Sign up

 **Andrew Stefatos** shared this folder. Want to do more with it? **Log in** | **Sign up**    ✕

|  |  |  |  |
|---|---|---|---|
| Join folder | Copy to Dropbox | Download | Copy link |

# Evelyn Gonzalez



| Name ↑ | Modified | Size |
|---|---|---|
| Brake Professional.pdf | 5 months ago | 502.14 KB |
| Collision.pdf | 5 months ago | 10.33 MB |
| Evelyn Gonzalez - payoff 2-19-2026... | 3 months ago | 210.22 KB |
| Gonzalez_Evelyn_Repurchase_Agre... | 5 months ago | 268.09 KB |
| IMG_3233.mp4 | 5 months ago | 14.94 MB |
| Payoff.pdf | 5 months ago | 91.33 KB |
| Registration.pdf | 5 months ago | 411.68 KB |
| Repair Orders.pdf | 5 months ago | 8.15 MB |



## PAYOFF/DEMAND STATEMENT

Borrower: Evelyn Gonzalez
Loan Number: xx7898-0091
VIN: 1N4BL4DV1RN407067

As of 2/19/2026, the amount required to pay off this loan on 2/20/2026is:

| | | |
|---|---|---|
| Principal and Interest Due: | $ | 31,466.24 |
| Late Charges Outstanding: | $ | 0.00 |
| Other Charges Due: | $ | 0.00 |
| **Total Payoff:** | **$** | **31,466.24** |

After 2/20/2026, add interest of $5.81 per day to the total payoff, to and including the date payoff is received in this office.

The next payment is due 3/15/2026; after this date additional charges may apply.

If this loan is a line of credit, the line has been frozen against further draws.
This is an open Line of Credit, and any future advances will alter the information above.

Partners Federal Credit Union reserves the right to amend or withdraw this statement at any time, to refuse insufficient funds, and to refuse if additional charges are incurred after preparation of this statement. These figures are subject to final verification based on the receipt of funds by Partners Federal Credit Union.

Please attach a copy of this statement with your remittance.

ADDRESS FOR OVERNIGHT DELIVERY
Partners Federal Credit Union
13705 International Dr. South
Orlando, FL 32821
800.948.6677

Sincerely,


Partners Federal Credit Union

A payment of

A payment of **$32,436.85** is required to pay off this loan on 01/13/26.

Principal Balance:                                    32,104.86
Interest Type:                                              Daily
Interest Rate:                                              6.740
Interest Due:                                              331.99
One Day's Interest:                                      5.9284
Due Date:                                          01/15/2026
Amount Past Due by Payoff Date:       0.00
Past Due Payment Count:                              0
Late Charge Due:                                        0.00



Payoff on 01/13/2026 vs. 05/15/2031

01/13/2026 — 331.99 — 32,436.85 — 0

05/15/2031 — 6,495.33 — 38,600.19 — 0

0                                            50,000

☐ Total Interest
☐ Total Amount
☐ Total Sales Tax
☐ Total Insurance